CHARLES E. LITTLEFIELD, and others,

*vs.*

CITY OF ROCKLAND.

Knox.    Opinion April 21, 1898.

*Way.   Location.   Description.   Void Taking.   Damages.*

The city of Rockland undertook to widen and straighten a portion of Sea street, the general course of which is about east and west on a peninsula in Rockland harbor. For that purpose a new northerly line for the street was run at a distance north from the old northerly side line, the city designing to condemn for its use all the land of private owners lying between the two lines, the old and new. The report of the committee, in charge of the alteration, correctly names all the owners over whose land the new line would run, and then declares that the city "takes all the land of the above named owners" between the two lines. The report of the committee certifies the amount of damages sustained by all the different owners thus named, giving either nominal or substantial damages to each owner named. It turns out, however, that there is a small parcel of land, twenty feet by forty feet, entirely embraced within the territory which the city designed to take and perhaps supposed they were taking, belonging to an owner other than those persons named as owners, who is not mentioned by name or otherwise in the report. The new line does not run over this land, which is the locus demanded in the action, nor approach very nearly to it. It does not appear whether the owner knew of the action taken by the city or not, but no appeal was taken by him. If the proceedings be a valid taking of the locus, then the owner loses his entire lot of land without any damages or compensation being awarded him, while having no other adjacent property to be benefited thereby. *Held;* that the locus was not included in the land taken; that if the committee intended to take it they omitted to do so; and that it was not merely an illegal or irregular taking, but not a taking at all.

AGREED STATEMENT.

This was a real action in which the plaintiffs sought to recover a lot of land on Sea street in the city of Rockland and claimed to have been taken by the city as a part of the street, June 2, 1890, and for the purpose of widening the street on its north side.

The case was submitted to the law court upon the following agreed statement of facts:—

"At the time of the change in the line of Sea street hereinafter

referred to, the lot claimed in the plaintiffs' writ was the property of Robert D. Metcalf, and is now the property of the plaintiffs unless the title was divested by the change in the line of Sea street in said Rockland as shown by the report of the committee on streets upon change of line of Sea street. On the north line of the street as changed, a sea wall some eighteen feet high was erected, and the space between said wall and the old north line of the street was filled in to a level with said wall and street, which includes these premises; said street was constructed and built at once after the adoption of the report of the committee, and has been traveled and used by the public to the extreme northern limit of the street as changed, since constructed and built, to the present time.

"The report of said committee, with the writ, pleadings, and a plan showing the property mentioned in the report and the plaintiffs' lot, make a part of the case."

The case is sufficiently stated in the opinion.

A portion of the plan showing the locus is presented in chalk.

*C. E. and A. S. Littlefield,* for plaintiffs.

Briefly summarized the return of the committee is as follows: In laying out and widening this street they took, and intended to take, the land only of specific individuals. It may be that they intended to describe all of the individuals owning property within the limits covered by the taking. However that may be, they have confined their taking to the individuals mentioned. They have not undertaken to take the land of any other individuals, known or unknown. The lot in controversy was, at the time of the laying out, owned by Robert D. Metcalf, and as the committee, and the city government acting upon the report of the committee, did not take or undertake to . take, either by name or otherwise, land owned by Mr. Metcalf, his rights in a valuable piece of property, located in the heart of the city, for which he 'has received no compensation, and no compensation has been attempted to be paid to him, remained entirely unaffected by the action of the city council in laying out and widening said street, and the plaintiffs are, therefore, entitled to recover.

Rule of strict compliance with all prerequisite conditions and limitations for the exercise of eminent domain: *Wilson* v. *Simmons,* 89 Maine, 254; *Packard* v. *Co. Com.,* 80 Maine, 45; *Southard* v. *Ricker,* 43 Maine, 576; Mills, Em. Dom. § 87; 7 Ency. Pl. & Pr. p. 468.

Return of committee does not show that the notice was published in a weekly newspaper, as required by § 19 of city charter; nor that the last publication was one week at least previous to the time appointed for hearing, etc. *Ladd* v. *Dickey,* 84 Maine, 194.

The return also says, "The last publication in each of said papers to be at least one week previous," etc., not that the last publication in each of said papers having been or being at least one week previous to the time of the meeting, etc. The return states not what had been done, but what was to be done, and nothing appears from the return to show that this necessary jurisdictional fact ever was performed.

*S. T. Kimball,* city solicitor, for defendant.

The general provisions of the statute R. S., c. 18, §§ 4, 14 and 16, and the charter of the city of Rockland are in harmony, with one exception, namely : the charter requires the committee to "make a written return of their proceedings . . . . containing the bounds and descriptions of the way, if laid out or altered, and the names of the owners of the land taken, when known and the damages allowed therefor." This exceeds the requirements of the statutes by adding thereto "and the names of the owners of the land taken, when known." In *Wilson* v. *Simmons,* 89 Maine, 242, (254,) where identically the same question was involved, the court held that failure to give "names of owners of land taken, when known, and the damages allowed therefor" is a defect in form rather than in substance, and "the defect may well be treated as an irregularity only."

It is not essential that the name of each and every person whose land is taken shall be specifically mentioned, provided the land is included within the general bounds. *Vassalboro, Petrs. for Certiorari,* 19 Maine, 341; *Howland* v. *Co. Com.,* 49 Maine, 143; *Monagle* v. *Co. Com. of Bristol,* 8 Cush. 360; *North Reading* v. *Co. Com.,* 7 Gray, 109.

The decisions of the courts warrant the position that where the specific general lines are explicitly given in the public notice, the land holder is put on his guard; therefore no claim can be set up by the plaintiffs that the words "above named owners," inserted in the report of the committee, served in the least to prejudice the then owner of the property in question.

Public notice was given more than two weeks previous to June 30, 1890, that the committee on highways and sidewalks would be in session for the purpose of altering, etc., the line of Sea Street. *Wilson* v. *Simmons,* supra.

SITTING: PETERS, C. J., HASKELL, WISWELL, STROUT, SAVAGE, JJ.

PETERS, C. J.    The city of Rockland undertook to widen and straighten a section of Sea street, a street located on a peninsula in

Rockland harbor. The design was to widen the street on its northerly side with a varying width so that the new northerly line would be a comparatively straight line, the old line being a circuitous and crooked one. The method was to run a new northerly line at a distance north from the old northerly line, and to take and condemn in behalf of the city all the land of private owners lying between the two lines, the old and new. The duty legally fell upon the committee on highways and sidewalks of the city to perform the service, and they attended to the duty assigned them and made as required by law a report of their doings, which was duly accepted by the city.

So much of the report as is essential to an understanding of the question before us is as follows: "We do determine and adjudge that public convenience requires that said Sea street shall be altered, widened and laid out in accordance with the following courses, bounds, distances and widths.

"Beginning at an iron bolt in the northerly line of Sea street as established by survey of Edwin Rose (said bolt being 145 5-10 feet westerly by said street line from an iron bolt in a stone monument at the corner of Lime street) and running thence about north 88 deg. 24 west (being about 18 deg. 25 min. more northerly than the present street line from same bolt) about ten feet over land of the Limerock Railroad Company, to land owned in common and undivided by the heirs of the late Samuel Pillsbury, deceased, viz.: Mary K. Dinsmore, Fannie E. Hurley, Maud L. Anderson, Grace E. Green, Fannie E. McDermot, William P. C. Pillsbury and Helen L. Clark (the line at said point being about three feet northerly from the present northerly street line); thence on same course about 180 feet more or less over the land of the said Pillsbury heirs, and passing through a house there situated owned by Alexander Hart to land of Davis Tillson (the line at this point being about 62 feet northerly from the present northerly line of Sea street); thence same course over land of said Tillson about 47 feet more or less, to land of said Pillsbury heirs (said line being at this point about 61 feet northerly from the existing northerly line of Sea street); thence on same course over land of said

Pillsbury heirs, about 67 feet more or less, to land of Catharine McIntire (the said line at this point being about 59 1-2 feet from the present northerly line of said Sea street); thence on same course over the land of said McIntire, about 67 feet more or less to land of Davis Tillson (said line at this point being about 51 ft. northerly from the present northerly line of said Sea street); thence on the same course over said Tillson's land, about 167 feet more or less to land owned in common by G. F. Kaler & W. H. Glover, E. K. Glover, Charles L. Smith, Ambrose Mills, and· Everett A. Jones, co-partners, (said line at this point being about 15 1-2 feet from the present northerly line of said Sea street); thence still on the same course over said Kaler et al.'s land, about 33 1-2 feet to the southeasterly corner of the mill on land of said Kaler et al. (the whole length of land above described being about 571 6-10 feet); thence deflecting about 8 deg. 46 min. northerly, and running about north 79 deg. 38 min. west about 48 1-2 feet over land of said Kaler et al. to a passage way owned in common by Francis Cobb and John T. Berry (said line being at this point about 6 1-2 feet northerly from the northerly line of Sea street as at present established); thence same course across said passage way about twenty feet to land of John T., F. H. & C. H. Berry (said line being at this point about 5 feet northerly from the northerly line of the said Sea street as at present established); thence same course over land of said Berrys about 114 feet more or less to a point where said line intersects the north line of said Sea street as at present established, being 60 feet by existing street line from an iron bolt which marks the intersection of the northerly line of Sea street with the easterly line of Main street; thence following the existing street line about north 76 deg. 50 min. west, 60 feet to the iron bolt aforesaid. All of the land of the above named owners, lying between the above described line and the northerly line of Sea street as heretofore established, is hereby taken for the purposes above named.

"Reference is made to survey and plan of City Engineer Tripp as part of this report."

It appears upon examination of the plan in the case that the new

line runs over the properties of different private owners just exactly as is declared in the return, so that the return is so far literally true. But this new single line does not of itself enclose any land. In order, therefore, to complete the description of the land to be taken for the purpose of widening the street, the return proceeds further to declare as follows: "All the land of the *above named* owners, lying between the above newly-described line and the old northerly line of Sea Street as heretofore established is hereby taken for the purposes above named." It does not pretend to take all the land between the two lines, but all the land of certain owners between those lines. It takes land not by metes and bounds but by ownerships between certain bounds. The return assesses damages, either nominal or substantial, specifically for all the owners named therein, and for no other owner or person.

Now it turns out that while the new line runs over Tillson's land just as stated there is a small lot of land, twenty feet by forty or forty-two feet, which the new line does not touch, situated on the old northerly line of Sea street but not extending back so far as to the new northerly line by about twenty feet, as indicated by the plan, a lot surrounded by one of the Tillson lots on three sides; and this lot is now owned by the plaintiffs, and at the date of the reconstruction of the street belonged to one who was not mentioned in the return as an owner. It was probably an oversight, and the supposition may have been that the lot was a portion of Tillson's extensive territory in that vicinity, but the language of the report is so explicit that we do not feel justified in concluding that the true owner had any notice that his land had been taken. The question is not whether the locus was taken illegally or irregularly, but whether it was taken at all. Our opinion is that it was not included in the land taken but excluded therefrom. And this result may be very justly influenced in some degree by the fact that the entire lot is absorbed into the limits of the new part of the street, not a trace of it being left behind, and not a cent allowed for it. The then owner had no adjoining land to be benefited by losing this land. All his land was taken if any of it was. It is from the very nature of things impossible that damages

were not sustained. The lot was at least valuable to construct a portion of a street upon. It is to be presumed that the committee would have assessed at least some damages for the owner's loss of an entire property, had they been aware of the existence of his title, and it is more just that the consequences of the mistake should fall on the city than on him. There would seem to be no reason why the city may not condemn the lot now for what they should have paid then, or possibly even for less, as the lot is now, as we understand it, so situated as to be entirely inclosed within and surrounded by land occupied by the street. What was flats is now solid embankment separating the lot in question from the sea.

Counsel for the city of Rockland, in response to the foregoing position upon which we are disposed to rest the decision of the case, contends, and not without much force, that it is evident enough from all the proceedings taken together, including the survey and plan and the vote of instructions passed by the city council, that there was a laying out of the street by general courses and distances, and that the restrictive words all of the land "of the above named owners" may be rejected as being without any special meaning in view of all the facts; and that this interpretation is aided by the finding of the committee that no persons other than those named were entitled to any damages. We think, however, that the owner of the locus might well suppose he was not awarded damages merely for the reason that his land was not specifically taken, and that for such reason he failed to take advantage of his right of appeal. It might reasonably seem to him that for some cause the committee preferred to carry the street around his lot rather than over it. At all events we feel impressed with the belief that the committee really omitted to take and condemn his lot whether they intended to include it in the taking or not. The case cited of *Wilson* v. *Simmons*, 89 Maine, 242, differs from this case in essential respects.

*Judgment for demandants.*